## Case No. 3,725.

### DECKER v. GRIFFITH et al.

### SAME v. SILVERBRANDT.

[13 Blatchf. 187; 2 Ban. & A. 178; 8 O. G. 944; Merw. Pat. Inv. 136.] [1]

Circuit Court, S. D. New York. Nov. 5, 1875.

PATENTS—NOVELTY—INFRINGEMENT—CUSHIONS FOR BILLIARD TABLES.

1. The claim of the reissued letters patent granted to Levi Decker, March 9th, 1869, for an "improvement in cushions for billiard tables," the original letters patent having been granted to him December 18th, 1866, namely, "The catgut or other cord E, partially or fully imbedded, or otherwise attached, at the angle a of the rubber cushion C, so as to protect said cushion against the impact of the ball, substantially as herein shown and described, and for the purposes set forth," is not void for want of novelty, by reason of anything found in the letters patent g an.ed to William K. Winant, August 10th, 1858, for "improvements in cushions for billiard tables."

2. In the Winant patent, a strip of steel merely lies in a crease or groove cut in the rubber, and is kept in place without being attached by screws, cement or otherwise. In the Decker patent. the cord is described as being moulded or imbedded entirely within the rubber. But, it appearing that, before Decker's invention, billiard tables were made in accordance with the Winant patent, but with the added feature of an arrangement for tying down the steel strip to the cushion, by means of holes in the lower edge of the strip and wires put through them and fastened to the under side of the rail. to keep the strip in place in the rubber. and it further appearing. that, prior to Decker's invention, billiard table cushions were made by one S., with a French clock spring placed in a slit cut in the upper face of the rubber, parallel to and near the under face of the rubber. and cemented into the slit. and cloth cemented over the slit: *Held*, that a suit founded on the Decker patent could not be maintained against billiard tables so constructed, or against an arrangement like that of S. but with a round wire substituted for the steel strip.

[This was a suit in equity by Levi Decker against William H. Griffith & Co. and against Charles Silverbrandt for the alleged infringement of a patent.]

William J. A. Fuller, for plaintiff.
Edward N. Dickerson, for defendants.

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permiss'on. Merw. Pat. Inv. 136, contains only a partial report.]

BLATCHFORD, District Judge. The patent sued on in these cases, being a reissue [No. 3,323] granted to the plaintiff, Levi Decker, March 9th, 1869, on the surrender of the original patent [No. 60,657] granted to him December 18th, 1866, for an "improvement in cushions for billiard tables," has been heretofore the subject of consideration by this court in the case of Decker v. Grote [Case No. 3,726]. The invention set forth in the specification of the patent has reference to a cushion formed of India rubber.[2] The specification says: "My invention has for its object the preservation of cushions for billiard tables against the impact of the ball. The nature of my invention consists in the employment or use of a catgut or other strong .cord, located in or at the upper corner or edge of the cushion, and immediately at the point against which the ball strikes when the game of billiards is played. * * * C is a body of rubber, which forms a cushion against which the ball strikes. This said rubber cushion has its inner or face side bevelled in such a manner that the ball strikes, at about its centre, against the upper corner or point.of the cushion, as clearly shown at a, fig..1. For the purpose of protecting the upper corner or edge of the cushion C, against the impact of the ball, I make a small concave or bed, immediately, or as near as may be, in the upper corner of the cushion, so that a suitable cord, E, or other support, may be fitted longitudinally, the whole length of the said cushion, around the table, so that the cushion is fully protected on all sides of the table against the impact of the ball. For this cord and support of the cushion I usually employ catgut, or cord may be used for the same purpose; but experience proves that catgut is most suitable for the purpose, as it is best adapted to prevent the cushion from giving way or yielding under the impact of the ball, it being understood that the ball only comes in contact with the cushion at a, the bevel or inclination being given the face of the cushion in order that all other parts of it will be kept clear of the ball. This cord E may be more thoroughly secured in its position by moulding it or imbedding it entirely within the rubber, near the corner, so as to perform the functions for which it is designed, or it may be secured by gluing a strip of cloth b over it, when not fully imbedded in the rubber, or it may be secured by any other well-known means. D is a strip of elastic cloth, which is cemented to the face side of the rubber strip or cushion C, and attached, at its lower edge, to the lower part of D," (elsewhere described as a strip or cleat, behind C,) "so as to support the upper edge a of C. It will be understood that the cord E is attached to D before the latter is secured to the cushion C and cleat B. To make the whole more secure, I usual-

[2] [For drawings illustrating the invention, see the following case, Decker v. Grote, No. 3,726.]

ly cover the whole with the cloth F, and after cover the whole again with the usual green cloth G. This cord E performs two very important functions, viz., it gives stiffness to the angle or corner a of the cushion C, so that it cannot yield or give way under the impact of the ball, to allow the latter to pass over it; and it also gives prominence to the said angle, so as to present, under the yielding of the cushion, a stiff, narrow line to the ball, thus obviating much friction, so as not to impede the motion of the latter, and still not interfering in the least with the elastic effects of the cushion upon the ball." The claim is: "The catgut or other cord E, partially or fully imbedded, or otherwise attached, at the angle a of the rubber cushion C, so as to protect said cushion against the impact of the ball, substantially as herein shown and described, and for the purposes set forth." In the case of Decker v. Grote [supra], it was said, in the decision of the court: "It is quite apparent, that the invention set forth is the placing and firmly securing along the upper edge or corner of the rubber cushion a strong, narrow cord, to receive the impact of the ball, and protect the cushion against such impact, by reason of its being placed at the point against which, and against which alone, the ball strikes. When the impact comes, the stiff cord receives it in substantially a horizontal direction, and prevents the cushion from giving way under such impact, and allowing the ball to ride over it and leave the table, while, at the same time, there is little friction from the impact, and the elastic force of the rubber acts fully through the cord interposed between it and the ball, to repel the ball in substantially a horizontal direction." The arrangement used by the defendant in that case was to imbed the cord in the rubber cushion, at the upper edge of it, by placing it there while the rubber was plastic, and before it was vulcanized, and by having a thin portion of the rubber interposed between the cord and the outside of the edge. It was held, that such arrangement embodied the invention claimed in the patent, and had the same mode of operation in use. The novelty of the invention was challenged in that case by the citation of an application for a patent filed by one Carpenter, in January, 1858; and rejected in April, 1858, of a patent to one Syrcher, granted in November, 1863, and of abandoned experiments made by one Delaney, in California, but the patent was sustained against those objections. Subsequently, in the case of Decker v. Griffith [Case No. 3,724], the use of a round metallic wire in the manner in which it is used by the defendants in the suit secondly above entitled, was held, by this court, to be an infringement of the Decker patent.

The alleged infringement complained of in the first above entitled suit consists in the use of a flat strip of metal, fitting in a slot moulded in the India rubber cushion, and running from end to end thereof, and strained by a straining key at its end. The strip is capable of moving in the direction of its length, when strained, though it is held firmly endwise at all times. The strip lies parallel with the inner inclined face of the cushion, and closely adjacent to it, and its upper edge is closely adjacent to the upper inner corner of the cushion. The alleged infringement complained of in the second above entitled suit consists in the use of a round metallic wire, arranged in like manner with the flat strip of metal, and situated in close proximity to the upper inner corner of the cushion.

It is contended, on the part of the defendants, that what they use, in so far as it is like what is described and claimed in Decker's reissue, existed prior to Decker's invention; in other words, that a narrow cord or wire of metal or other equivalent material, placed and firmly secured along and within, and closely adjacent to, the upper edge or corner of the rubber cushion, so as to receive the impact of the ball, existed before Decker's invention. Decker testifies that he "got the idea" of his invention in the fall of 1864, he thinks, in September; that he thinks he made cushions of tables complete, embodying the invention, in the fall of 1864; and that he is quite certain he did so before March, 1865.

The defendants introduce and refer to a patent granted to William K. Winant, August 10th, 1858, for "improvements in cushions for billiard tables." The specification of that patent sets forth that the invention of Winant "consists in the introduction of a strip of spring steel (or equivalent material), into a crease or groove cut in the upper face of the rubber, near the angle thereof, in such a manner that said steel is protected from injury by the rubber which thus intervenes between the steel and the ball, and the cushion is rendered sufficiently firm to prevent the ball imbedding and injuring the correctness of the angle of deflection; and besides this, the strip is so narrow as not to be injured by the concussion, and is retained in place without requiring any attachment by screws, cement, or otherwise. * * * In the upper part of the cushion d, and near its edge, I make a long incision parallel to its edge, and at a slightly greater inclination than the face of the cushion, and into said crease or groove, thus formed, I introduce a narrow, thin strip of steel i, or equivalent material, and the covering e, of cloth, or other material, as usual, completes

Fig 1

the cushion. It will be apparent that said strip 1 is retained in place by the rubber, and acts to prevent the ball imbedding, and at the same time is itself protected from injury by the rubber on both sides."

There is one feature in this patent of Winant's which is unlike the arrangement of Decker. Winant describes his strip of steel as merely lying in the crease or groove cut in the rubber, and as being kept in place without being attached by screws, cement, or otherwise; whereas Decker describes his cord as being moulded or imbedded entirely within the rubber. The patent of Winant's was considered, and very properly, by the patent office, when Decker's patent was reissued, as not having anticipated Decker's claim in his reissue.

It is shown by the evidence of Daniel D. Winant, the brother of William K. Winant, that, prior to 1864, he made many billiard tables, constructed in accordance with the Winant patent, but with the added feature of an arrangement for tying down the steel strip to the cushion by means of holes in the lower edge of the strip, and wires put through them and fastened to the under side of the rail, to keep the strip in place in the rubber. In that arrangement the steel strip was incorporated in the structure, so as to be incapable of dislodgment, quite as effectually as if moulded or imbedded entirely within the rubber, as suggested in Decker's specification. It stiffened the angle or corner of the cushion, and prevented its yielding under the impact of the ball, and allowed the ball to pass over it. It presented, substantially, the same features and mode of operation shown in the defendants' arrangement in the first above entitled suit, where the flat strip of metal is used, so far as there is anything in common between the plaintiff's arrangement and that of the defendants. The greater or less inclination of the strip to the face of the cushion, the greater or less proximity of the face of the strip to the inner face of the cushion, the greater or less width of the strip, and the greater or less proximity of its upper edge to the upper corner of the cushion, are questions of degree only, so long as the effective feature of the defendants' arrangement is found in the earlier structure, in connection with the use of the strip, which is shown to be the fact.

It is also shown, that one Stevens, in Boston, prior to 1864, made India rubber cushions for billiard tables, which had a French clock spring placed in a slit cut in the upper face of the rubber, parallel to and near the inner face of the rubber, bringing the upper edge of the spring near the upper corner of the rubber. The spring was cemented into the slit, and cloth was glued or cemented over the slit. The spring was thus imbedded entirely within the rubber. A portion of a cushion of such construction, made prior to 1864, by Stevens, is produced. It contains

the features presented by the defendants' arrangement with the flat strip, so far as the latter is like the plaintiff's arrangement.

As to the defendants' arrangement with the round wire imbedded in the rubber, it required no invention to substitute, in the Stevens arrangement, a round wire for the steel strip. If the plaintiff's reissued patent can, in view of the Winant and Stevens arrangements, above described, be upheld at all, because it is made to cover a cord imbedded entirely within the rubber, and is not limited, as his original patent was, to a cord applied outside of the upper corner of the cushion, it certainly cannot be extended to cover arrangements which are substantially the same as the Winant and Stevens arrangements.

The bill must be dismissed, with costs.

[NOTE. For other cases involving this patent, see note to Decker v. Grote, Case No. 3,726.]